**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: JON S. WILSON,
Debtor.

COOK GROUP, INCORPORATED;
WILSON-COOK MEDICAL,
INCORPORATED; COOK, INC.; VANCE

No. 97-1908

PRODUCTS, INCORPORATED; SABIN
CORPORATION,
Plaintiffs-Appellants,

v.

C. R. BARD, INCORPORATED,
Intervenor-Appellee.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CA-97-222-2)

Argued: January 27, 1998

Decided: June 26, 1998

Before HAMILTON and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Phillips wrote the opin-
ion, in which Judge Hamilton and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Aaron J. Kramer, SCHIFF, HARDIN & WAITE, Chi-
cago, Illinos, for Appellants. Michael Lindsay Robinson, ROBINSON
& LAWING, Winston-Salem, North Carolina, for Appellee. **ON
BRIEF:** Aphrodite Kokolis, Linda K. Stevens, Ronald Wilder,
SCHIFF, HARDIN & WAITE, Chicago, Illinois; Jeffrey E. Oleynik,
Jimmy W. Phillips, Jr., BROOKS, PIERCE, MCLENDON, HUM-
PHREY & LEONARD, Greensboro, North Carolina; William B. Sul-
livan, WOMBLE, CARLYLE, SANDRIDGE & RICE, Winston-
Salem, North Carolina, for Appellants. Norwood Robinson, ROBIN-
SON & LAWING, Winston-Salem, North Carolina; Thomas J. Wie-
gand, WINSTON & STRAWN, Chicago, Illinois, for Appellee.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

This is an appeal by several related companies (collectively
"Cook") challenging a ruling of the Bankruptcy Court allowing dis-
closure of certain protected trade secret information to two high-level
employees of a company, C.R. Bard, Incorporated ("Bard"), to allow
Bard to defend itself against a state court action by Cook that claimed
misappropriation of the trade secrets. We affirm.

I.

In 1990, Wilson-Cook Medical, Inc. ("Wilson-Cook") sued Wiltek
Medical, Inc. ("Wiltek") alleging, among other things, misappropria-
tion of trade secrets involving medical devices ("Wilson-Cook case").
In due course, the Wilson-Cook case was consolidated with an action
filed by the Cook Companies against Jon Wilson ("Wilson"), the
founder of Wiltek and former president of Wilson-Cook, and with
Wilson's personal bankruptcy proceeding.

The consolidated action was tried without a jury before Judge Wil-
liam L. Stocks of the United States Bankruptcy Court for the Middle
District of North Carolina. On May 22, 1995, Judge Stocks entered

2

an order of Injunction and Judgment ("Judgment"), permanently enjoining Wilson and Wiltek from "using, licensing, marketing or otherwise displaying or disclosing" "any . . . of the trade secrets . . . found by this court." (JA 647.) Accompanying the Judgment was a 194-page Memorandum Opinion, Findings of Fact and Conclusions of Law ("Memorandum"). Because the Memorandum and Judgment contained trade secret information, Judge Stocks ordered that the documents be filed under seal and subject to a Stipulated Protective Order, previously entered pursuant to Fed. R. Civ. P. 26.

On July 3, 1995, Cook sued Bard in Indiana state court, alleging, among other things, misappropriation of trade secrets and violation of the injunction entered in the consolidated action. Bard was not a party in the consolidated action. Although the applicable Indiana rules of court required that documents referenced in a complaint be attached to that filing, Cook submitted neither the Memorandum nor the Judgment with its complaint. When the Indiana court ordered Cook to produce the Judgment and Memorandum, Cook indicated that it could not provide the materials because they were under seal in the consolidated action. The Indiana court then allowed Cook time to approach Judge Stocks regarding a lifting of the protective order. When Cook failed to act, Bard moved to intervene in the consolidated action to unseal the Memorandum and Judgment. After a hearing, Judge Stocks entered a written order allowing disclosure of the papers to Bard's counsel, independent experts, and two of its employees ("October Order").* The order further provides:

> Each of the persons to whom the Memorandum . . . and Judgment are made available . . . shall agree, expressly and in writing, to abide by this Order and the Stipulated Protective Order entered by this court . . ., and each such person shall thereby consent to the jurisdiction and contempt power

_____

*Specifically, Judge Stocks ordered that the documents be produced to any two of the following employees designated by Bard: Jim Burger, Supervisor of Advanced Manufacturing Engineering; Bob Greene, Manufacturing Cell Manager; John Dimitriou, Senior Process Engineer; Paul Mucci, Vice-President of Manufacturing; and Ed McNamara, Section Head-NPD (Biliary Product Line).

of this Court with respect to enforcement of this order and the Stipulated Protective Order.

(JA 332.)

When Cook challenged that portion of the October Order requiring disclosure to Bard's employees, the United States District Court for the Middle District of North Carolina affirmed. On appeal to this court, Cook again challenges only that portion of the October Order allowing disclosure to Bard's employees. Pursuant to various stay orders, disclosure of the Judgment and Memorandum has not been made yet to Bard's employees.

II.

On appeal from a district court's order affirming an order of a bankruptcy court, this court reviews the decision of the district court de novo, see In Re Runski, 102 F.3d 744, 745 (4th Cir. 1996), and applies the same standard of review that the district court applied to the bankruptcy court's decision. See In Re Southeast Hotel Properties Ltd. Partnership, 99 F.3d 151, 154 (4th Cir. 1996). As we have noted, a protective order entered pursuant to Fed. R. Civ. P. 26(c) is reviewed for abuse of discretion. See M & M Med. Supplies & Svc. Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992) (en banc), cert. denied, 508 U.S. 972 (1993).

Fed. R. Civ. P. 26(c)(7) provides that "for good cause shown," a court may enter a protective order requiring "that a trade secret . . . not be revealed or be revealed only in a designated way." To obtain a protective order under Rule 26(c), the party resisting discovery must establish that the information sought is covered by the rule and that it will be harmed by disclosure. See 8 Charles Alan Wright, et al., Federal Practice and Procedure § 2043, at 555-57 (2d ed. 1994). If this showing is made, the party seeking the materials then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure. See id. at 559.

Here, it is undisputed that the Judgment and Memorandum contain trade secrets covered by Rule 26(c). Also, Cook concedes that the

4

information is relevant to Bard's case. Cook argues, however, that Bard has not established necessity. Cook further contends that the lower courts failed to consider the harm it would suffer from disclosure and to weigh that harm against Bard's claimed need for the documents.

Cook argues that Bard can adequately defend itself in the Indiana action without the Judgment and Memorandum being disclosed to its employees. According to Cook, "numerous precedents" recognize that a competitor can litigate trade secret issues without the secrets being disclosed to its employees, provided they are disclosed to its outside counsel and/or independent experts. As Judge Stocks noted, however, the Indiana action is not a simple trade secrets case; Cook's Indiana lawsuit expressly seeks to enforce against Bard the terms of the injunction issued in the consolidated action. Since Bard was not a party to that action, Bard's employees need the Memorandum and Judgment to understand the core allegations leveled against them. Because none of Cook's "numerous precedents" arise in this context, they are distinguishable.

Cook contends that Judge Stocks failed to consider the harm it will suffer from disclosure and to balance that harm against Bard's need for its employees to access the documents. According to Cook, when the requisite balancing is done, the scales tip decidedly against disclosure.

Although Judge Stocks's October Order does not expressly consider the harm to Cook in the course of its balancing analysis, Bard's need for the information and the potential harm to Cook upon disclosure were argued extensively at the hearing on Bard's motion to intervene. Also, at the hearing, Judge Stocks indicated that Bard was entitled to obtain the documents to a "limited" and "minimal" degree. (See, e.g., JA 296 ("I'm willing to make it available to the client to a limited degree, a minimal degree, that will enable the client to participate in the defense of the claim in a meaningful way."); id. at 298 ("I'm not just going to open it up to anybody and everybody. I think it's just a minimum amount necessary for the client to participate in the defense of the case in a meaningful way from the outset.").) These statements implicitly reflect consideration of the harm to Cook upon

5

disclosure and a balancing of that harm against Bard's need for the material.

Arguing that the harm it will suffer outweighs Bard's need for the information, Cook asserts that disclosing trade secrets to a direct competitor in a competitive industry poses grave business risks. Accordingly, Cook argues, "the weight of judicial authority in inter-competitor trade secrets cases" holds that trade secrets may only be disclosed to outside counsel and independent experts. Cook thus appears to advocate a per se rule prohibiting disclosure of trade secrets to a competitor's employees. When pressed on this issue at oral argument, however, Cook backed away from the contention that a per se rule applies. Such a retreat is not surprising in light of the fact that in the consolidated action, Cook signed on to the Stipulated Protective Order allowing disclosure of confidential materials to "Jon Wilson and any management-level full-time employee of Wiltek Medical Inc." (JA 156.) Furthermore, we note that at least one of Cook's own cases undercuts the suggestion that a per se rule bars disclosure of trade secrets to a competitor's employees. See Safe Flight Instrument Corp. v. Sundstrand Data Control Inc., 682 F. Supp. 20, 22 (D. Del. 1988) (refusing to allow disclosure to an officer of plaintiff's corporation who was also a working scientist of the company but suggesting that "plaintiff might, if necessary in the future, nominate a non-technical officer to . . . review . . . the confidential documents"). We therefore reject any suggestion that the disclosure ordered here violated any per se non-disclosure rule.

Cook further contends that the harm from disclosure is not potential but inevitable. According to Cook, once Bard's technical employees become familiar with Cook's trade secrets, they inevitably will be influenced by that information. Even if we were to subscribe to the "inevitable disclosure" theory advanced by Cook, the requisite balancing test contemplates that some harm will be suffered as a result of disclosure. Thus, even if harm is inevitable or great, the inquiry is not at an end; the court must still determine whether the need for the information outweighs the harm that will be suffered from disclosure. Here, Bard's need for the information is acute: without disclosure of the Judgment and Memorandum to Bard's employees, Bard will be unable to understand the very nature of the claim alleged against it in the Indiana action. Judge Stocks did not abuse his discretion in con-

6

cluding that this need outweighed the harm Cook will suffer. Thus, if Cook wishes to pursue a claim for enforcement of the injunction against Bard, it must disclose the terms of that injunction to Bard's employees, as specified by Judge Stocks. Any other result would be inequitable. Finally, we note that Cook's Indiana injunction claim is just a "shortcut" around its Indiana misappropriation claim. Cook thus can avoid any harm that might result from disclosure by dropping the injunction claim and pursuing only the misappropriation claim.

III.

Alternatively, Cook argues that Judge Stocks abused his discretion by permitting immediate disclosure of the Judgment and Memorandum to Bard's employees. Cook contends that a decision on disclosure should be postponed until it can determine the extent to which Bard has learned of and adopted its trade secrets. Specifically, Cook advocates delaying a decision on disclosure until after it has the opportunity to inspect Bard's facilities.

At bottom, Cook wants to sue Bard for violating a secret injunction and delay revealing the terms of that injunction until it has the opportunity for a discovery expedition in Bard's plants during which time Bard will remain in the dark as to what Cook is looking for. Judge Stocks did not abuse his discretion in rejecting such a procedure.

IV.

For the reasons discussed above, the decision of the district court, affirming that of the Bankruptcy Court, is

AFFIRMED.

7