**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: J. W. FORTUNE,
INCORPORATED,
<u>Debtor.</u>

J. W. FORTUNE, INCORPORATED,                                   No. 98-1115
<u>Plaintiff-Appellant,</u>

v.

MCLEAN SQUARE ASSOCIATES, G.P.,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-97-1486-A)

Argued: December 2, 1998

Decided: February 17, 1999

Before WILLIAMS and MOTZ, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Reversed and remanded by unpublished per curiam.

_____

**COUNSEL**

**ARGUED:** Henry St. John FitzGerald, Arlington, Virginia, for
Appellant. Robert Michael Marino, REED, SMITH, SHAW &
MCCLAY, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, J.W. Fortune (Fortune), which previously operated under the name Best Fortune, Inc., leased commercial space from Appellee, McLean Square Associates, G.P. (MSA). During the course of the lease, and in the middle of ongoing litigation between Fortune and MSA, Fortune filed for protection under Chapter 11 of the Bankruptcy Code. Applying 11 U.S.C.A. § 365(b)(1)(A) (West 1993 & Supp. 1998), the bankruptcy and district courts determined that Fortune would have to cure a default under the lease by paying substantial professional fees to MSA before Fortune could assume the lease. Fortune contests this holding. Because we conclude that the lower courts misinterpreted the lease provisions, we reverse and remand the case for further findings and determinations consistent with this opinion.

I.

In late 1990, Fortune leased unfinished retail space in McLean, Virginia, from MSA for a ten-year term. As required by the lease, Fortune finished the space at a cost of approximately $300,000 and opened a Chinese restaurant that operated successfully for several years.

In 1994, MSA filed for bankruptcy protection and asserted the need to relocate Fortune's restaurant pursuant to a redevelopment clause in the lease (the redevelopment clause). MSA's attempt to relocate Fortune's restaurant began a protracted course of litigation that led to this appeal.

Fortune first launched a direct assault of the forced relocation in MSA's bankruptcy proceeding. In an order dated July 18, 1995, the bankruptcy court rejected Fortune's challenge and upheld MSA's

2

right to relocate the restaurant to alternate premises under the lease's redevelopment clause. The parties continued to clash, however, about the suitability of the premises and the timing of the move.

In August of 1995, shortly after the bankruptcy court enforced the redevelopment clause, Fortune tendered a check to MSA for the August rent. The check was returned due to insufficient funds. On August 11, 1995, MSA filed an unlawful detainer action in state district court against Fortune and Fortune removed the case to state circuit court. A trial was eventually scheduled for April 26, 1996. MSA, however, continued to ready the alternate premises for Fortune.

While the unlawful detainer trial was pending, Fortune also filed for protection under Chapter 11 of the Bankruptcy Code, staying MSA's attempt to eject Fortune. Although MSA challenged the stay, the bankruptcy court not only determined that the stay was effective against the unlawful detainer action, but also that MSA's continued work on the alternate premises for Fortune's restaurant operated as a waiver of MSA's position that the lease had been terminated.

Having won that round, Fortune next moved to assume its lease with MSA so that it could continue its operations. MSA opposed the assumption. On March 28, 1997, the bankruptcy court ruled that Fortune could assume the lease if it complied with the requirements of the Bankruptcy Code as provided in 11 U.S.C.A. § 365(b)(1) (West 1993 & Supp. 1998). Specifically, the bankruptcy court ordered Fortune to pay $27,200.46 in rent and utility costs, and to pay attorneys' fees arising from the enforcement of the lease. MSA was ordered to submit the requested fees to the bankruptcy court within thirty days. Rather than providing a summary of legal expenses incurred to enforce the terms of the lease, MSA submitted a wide range of "administrative expenses" under § 503 of the Bankruptcy Code.[1] See 11 U.S.C.A. § 503 (West 1993 & Supp. 1998).

_____

[1] These expenses included a number of costs incurred because of MSA's relationship with Fortune, but the professional fees constituted the bulk of the requested amount. The professional fees represented the cost of the litigation between Fortune and MSA and included attorneys' fees for handling: (1) MSA's unlawful detainer action, (2) MSA's

3

By order entered April 25, 1997, the bankruptcy court ordered the requested fees to be paid under the authority of Bankruptcy Code § 365(b)(1)(B), not § 503. See 11 U.S.C.A. § 365(b)(1)(B) (West 1993 & Supp. 1998) ("If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee . . . compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default . . . ."). The bankruptcy court correctly stated that § 365(b)(1)(B) does not grant independent authority to collect "pecuniary losses," but simply provides that the losses may be collected if allowed by independent authority.

The bankruptcy court found such authority for the majority of the requested amount, the professional fees, in paragraph 45 of the lease between Fortune and MSA (paragraph 45):

> If Landlord shall incur any charge or expense on behalf of Tenant under the terms of this Lease, or Landlord elects to cure any default of Tenant under the Lease, or is forced to incur any other expense arising out of such default by Tenant [including, without limitation, reasonable attorney's fees and disbursements in instituting, prosecuting, or defending any suits, actions, or proceedings (including any bankruptcy or insolvency proceedings) to enforce Landlord's rights under this or any other Section of this Lease or otherwise], the sums so paid by Landlord with all interest, costs, and damages shall be paid by Tenant to Landlord upon written demand and if not immediately paid shall be deemed to be additional rent, payable with the next due installment of Minimum Rent; in addition to and not in limitation of any

_____

motion for relief from stay, (3) Fortune's motion to assume the executory lease, (4) various aspects of Fortune's move into the alternate premises, (5) general bankruptcy issues, (6) MSA's motion to disqualify Fortune's counsel, (7) Fortune's action for breach of the lease brought in MSA's bankruptcy case, and (8) Fortune's disclosure statement and plan of reorganization in its bankruptcy case.

> other rights and remedies which Landlord may have in case of the failure by Tenant to pay such sums when due, such non-payment shall entitle Landlord to the remedies available to it hereunder for non-payment of rent.

(J.A. at 1010.) Applying § 365(b)(1)(B) and paragraph 45, the bankruptcy court awarded MSA $141,391.29 in professional fees, the entire amount requested.**2** Both Fortune and the committee of Fortune's unsecured creditors moved the bankruptcy court to reconsider the April 25 order.

The bankruptcy court granted the motion to reconsider in part and denied it in part. In a memorandum opinion filed August 11, 1997, the bankruptcy court specifically reconsidered the substantial award of professional fees. To clarify its earlier decision, the bankruptcy court stated that because paragraph 45 required the payment of the requested professional fees to MSA, and Fortune had not paid the amounts due, Fortune was in default and § 365(b)(1)(A), not § 365(b)(1)(B), required cure of the default before the executory lease could be assumed. See 11 U.S.C.A. § 365(b)(1)(A) (West 1993 & Supp. 1998) ("If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .").**3** In concluding that

_____

**2** The bankruptcy court also awarded MSA an additional $7,523.07 under § 365(d)(3) for unpaid rent and repair expenses related to the leased space.

**3** The primary difference between § 365(b)(1)(A) and § 365(b)(1)(B) is that § 365(b)(1)(A) mandates the cure of a default pursuant to the contract or lease, while § 365(b)(1)(B) mandates compensation for any actual pecuniary loss arising from the default. Thus, § 365(b)(1)(A) speaks to the underlying default itself and § 365(b)(1)(B) speaks to the consequences of such a default. See Adventure Resources, Inc. v. Holland, 137 F.3d 786, 798 (4th Cir.) (noting that the debtor must "compensate all non-debtor parties for actual pecuniary losses that have resulted" from the default), cert. denied, 119 S. Ct. 404 (1998). As this Court has stated recently, "[e]ntitlement to attorneys' fees, however, is dependent on the terms of the lease and on state law; § 365(b)(1)(B) does

paragraph 45 of the lease required the payment of substantial professional fees related to virtually all aspects of the litigation between Fortune and MSA, the bankruptcy court noted that "[i]n binding itself to this term of the lease agreement, Fortune bestowed upon [MSA] significant remedies even within the context of a bankruptcy proceeding." (J.A. at 1508.) The bankruptcy court determined that under Virginia law the contract's terms must be construed in accordance with their plain meaning and concluded that "or otherwise," contained in the bracketed portion of paragraph 45, had a far-reaching effect. The bankruptcy court thus again ordered Fortune to pay all amounts requested by MSA, except for $1372.00 related to media relations work, before it could assume the lease. At that point, the total amount awarded had grown to $158,983.01, primarily due to an increase in attorneys' fees.

Fortune appealed the award of fees to the district court. Like the bankruptcy court, the district court determined "that [paragraph] 45 is far-reaching," and again specifically pointed to the "or otherwise" terminology contained in paragraph 45. (J.A. at 1650-51.) The district court went on to affirm the bankruptcy court's August 11, 1997 memorandum opinion in all respects.

On appeal to this Court, Fortune argues that the lower courts construed paragraph 45 of the lease too broadly, resulting in an overcalculation of fees that Fortune must pay to MSA before assuming the lease. MSA naturally argues to the contrary and also contends that Fortune did not properly raise the lease interpretation issues below.

II.

"On appeal from a district court's order affirming an order of a bankruptcy court, this [C]ourt reviews the decision of the district

_____

not create an independent right to an award of attorneys' fees." Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), No. 98-1497, slip op. at 9 (4th Cir. Jan. 19, 1999). We need not decide this issue here, however, because the appeal is founded upon the amounts awarded to MSA through § 365(b)(1)(A), in other words, upon curing a default of the lease.

court de novo and applies the same standard of review that the district court applied to the bankruptcy court's decision." Cook Group, Inc. v. C.R. Bard, Inc. (In re Wilson), 149 F.3d 249, 251-52 (4th Cir. 1998) (internal citations omitted). Because this appeal concerns questions of law, we review the judgment de novo. See Cooper v. Productive Transp. Servs., Inc. (In re Bulldog Trucking, Inc.), 147 F.3d 347, 351 (4th Cir. 1998).

A.

As a threshold matter, MSA argues that we should dismiss this appeal out of hand because Fortune did not raise the lease interpretation issue during the bankruptcy court litigation. Because we believe the argument was sufficiently raised during the bankruptcy court litigation, this point is quickly resolved.

In Fortune's "Motion for Reconsideration of Order Entered April 25, 1997 Regarding Claims for Administrative Expenses," filed on May 5, 1997, Fortune argued that paragraph 45 covered only costs "arising from a default by the tenant." (J.A. at 1194.) Fortune concluded, therefore, that MSA was entitled only to the costs it incurred during the "pre-petition eviction suit in the Fairfax Circuit Court." (J.A. at 1194.) This argument sufficiently raised the issue of paragraph 45's interpretation at the bankruptcy court.

We do not mean to say that Fortune's arguments on this point were as extensive as they are now presented. But, we also note that it was not until the bankruptcy court issued its August 11, 1997 memorandum opinion that the extraordinarily liberal interpretation of paragraph 45 first debuted. Naturally, as MSA admits in its brief, Fortune more fully made its arguments on the lease interpretation issue at the district court after it became aware of the importance being attached to what otherwise might seem a rather insignificant clause within paragraph 45. Contrary to MSA's position, our review of the record reveals that Fortune sufficiently raised its arguments regarding the proper interpretation of the lease both at the bankruptcy court and at the district court, and the matter is appropriately presented for our review.

7

B.

We now turn to the merits of Fortune's argument. Fortune argues simply that the costs and fees due to MSA under paragraph 45 do not include all of those awarded by the bankruptcy and district courts. This lease interpretation issue is important because Fortune wishes to assume the lease in bankruptcy and, under § 365(b)(1)(A) of the Bankruptcy Code, a debtor cannot assume a lease unless it cures any default under the lease. See 11 U.S.C.A.§ 365(b)(1)(A) (West 1993 & Supp. 1998). As the lower courts properly recognized, § 365(b)(1)(A) mandates the cure of any default before assuming the lease, which is determined by the governing state law. Cf. Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), No. 98-1497, slip op. at 9 (4th Cir. Jan. 19, 1999). In this case, it is the law governing the interpretation of the lease that defines default. The lease specifically provides that it is to be interpreted under Virginia law. We therefore turn to Virginia's law of contract interpretation to determine the extent of Fortune's obligations prior to assuming the lease.

Because of the importance of the particular language of paragraph 45, we will repeat it here:

> If Landlord shall incur any charge or expense on behalf of Tenant under the terms of this Lease, or Landlord elects to cure any default of Tenant under the Lease, or is forced to incur any other expense arising out of such default by Tenant [including, without limitation, reasonable attorney's fees and disbursements in instituting, prosecuting, or defending any suits, actions, or proceedings (including any bankruptcy or insolvency proceedings) to enforce Landlord's rights under this or any other Section of this Lease or otherwise], the sums so paid by Landlord with all interest, costs, and damages shall be paid by Tenant to Landlord upon written demand and if not immediately paid shall be deemed to be additional rent, payable with the next due installment of Minimum Rent; in addition to and not in limitation of any other rights and remedies which Landlord may have in case of the failure by Tenant to pay such sums when due, such

8

> non-payment shall entitle Landlord to the remedies available
> to it hereunder for non-payment of rent.

(J.A. at 1010.) Both the bankruptcy and district courts determined that the meaning of paragraph 45 was plain and unambiguous and that the bracketed language in paragraph 45 compelled the conclusion that Fortune was in default unless it paid all the attorneys' fees arising from the proceedings in the bankruptcy court. Both courts particularly focused on the phrase "or otherwise" in the bracketed portion of paragraph 45.

Under this interpretation of paragraph 45, Fortune was left with a hefty bill for professional fees. Paragraph 45 clearly treated any fees due as "additional rent" and because that amount remained unpaid, Fortune was in default per the lease terms. Thus, the lease could not be assumed until the professional fees were paid.

Fortune argues correctly that this interpretation of the lease was incorrect and that the remedy conferred under paragraph 45 was not so broad. Virginia law requires a lease to be interpreted to give effect to all provisions. See Brand Distributors, Inc. v. Insurance Co. of N. Am., 532 F.2d 352, 358 n.5 (4th Cir. 1976) (citing Carpenter v. Town of Gate City, 40 S.E.2d 268 (Va. 1946)). In addition, where the agreement is plain and unambiguous in its terms, the rights of the parties will be determined from the terms of the agreement. See Harris v. Woodrum, 350 S.E.2d 667, 669 (Va. Ct. App. 1986). As an issue of law, "[i]t is the court's responsibility to determine the intent of the parties from the language they employ." Bender-Miller Co. v. Thomwood Farms, Inc., 179 S.E.2d 636, 639 (Va. 1971). Under Virginia law, we must therefore interpret the plain meaning of each term of the lease while giving effect to all portions of the lease agreement.

Before we begin this task, we note another part of the lease, a portion of paragraph 30.B's language, which also contemplates remedies for default under the lease:

> If either Landlord or Tenant shall default in the performance
> of any covenant on its part to be performed by virtue of any
> provision in this Lease, and if in connection with the
> enforcement of the non-defaulting party's rights or reme-

9

dies, such non-defaulting party shall properly and reasonably incur fees and expenses for services rendered (including reasonable attorneys' fees), then such fees and expenses shall, if said non-defaulting party shall prevail in litigation, be immediately reimbursed by the defaulting party on demand.

(J.A. at 1006.)

From a reading of this lease, it is clear that both paragraphs 30.B and 45 contemplate remedies for default under the lease. Paragraph 30.B plainly gives Fortune and MSA the right to collect reasonable attorneys' fees for the cure of any default if they are the prevailing party. Paragraph 45's primary purpose seems to be to treat the expenses of default as additional rent.

The plain language of paragraph 45 states that the expenses MSA may charge as additional rent include those incurred under the terms of the lease or those that the landlord elects or is forced to incur because of Fortune's default. This language is followed, within the same sentence, by bracketed text that under a straightforward reading merely supplements or serves to clarify the preceding language. As if to reinforce its purpose as a supplement, the bracketed text begins "including, without limitation." (J.A. at 1010.) This text does not expand the scope of the foregoing language. The phrase at the end of the bracketed text, "or otherwise," thus merely reinforces that the bracketed term should not be considered a constraint on the charges or expenses identified by the preceding and primary language.

The lower courts' reading would expand "or otherwise" into an incredibly expansive right of MSA, as each court noted in its opinion. Taken out of context and read by itself, the bracketed text, and particularly "or otherwise," would literally allow MSA to charge any enforcement of its rights to Fortune. In fact, this reading does not even seem to limit it to actions involving both Fortune and MSA. This interpretation is simply contrary to a plain reading of the contractual language.

Furthermore, the interpretation adopted by the lower courts ignores the remainder of the lease and fails to give full effect to each of its

10

provisions. If the bracketed text took on the expansive interpretation attributed to it by the lower courts, then there would be no need for paragraph 30.B because attorneys' fees, along with virtually anything else, would be recoverable under paragraph 45. In fact, there would be no need even for the primary language that begins paragraph 45. From the language employed, taking the contract as a whole, the plainly expressed intent of the parties limits amounts due and charged as rent to those incurred by MSA under the terms of the lease or to cure a default by Fortune. This language would, therefore, exclude amounts paid in the course of litigation to resolve primarily bankruptcy-related issues and other collateral matters.

For instance, it is apparent that the amounts requested by MSA for attorneys' fees that relate to recovering repair and maintenance expenses and additional rent from Fortune are owed under the lease terms, and nonpayment is a default.[4] It is equally clear that the professional fees requested from Fortune that arose because of MSA's review of Fortune's bankruptcy reorganization plan are so tenuously, if at all, related to a breach of the lease that they are not due under paragraphs 30.B or 45, and thus do not constitute a default. There are, therefore, two operative questions that must be answered in evaluating the propriety of the professional fees requested. First, were the attorneys' fees incurred "in connection with the enforcement of the non-defaulting party's rights or remedies" because of the other party's default and did the "non-defaulting party . . . prevail in [that] litigation." (See J.A. at 1006 (reciting paragraph 30.B of the lease).) Second, did MSA incur the "charge or expense on behalf of" Fortune, "elect[ ] to cure any default of" Fortune, or was it "forced to incur any other expense arising out of such default by" Fortune. (See J.A. at 1010 (reciting paragraph 45 of the lease).) In other words, the dispositive inquiry is whether MSA directly incurred the professional fees because of a proven default by Fortune.

_____

**4** We note that the rent and repairs and maintenance expense arose because of Fortune's default under the lease as determined by the bankruptcy court. MSA therefore prevailed in enforcing its rights under the lease. Thus, the outstanding attorneys' fees are owed and constitute a default under paragraphs 30.B and 45.

11

Our interpretation of the contractual language requires that the case be remanded to decide which fees requested by MSA relate to curing defaults under the terms of the lease and can therefore be recovered as a prerequisite to assuming the lease under § 365(b)(1)(A). The fees requested that instead relate to the litigation of bankruptcy or other issues and that are collateral to any default under the lease are not owed by Fortune to MSA under the terms of the lease and cannot, therefore, hinder Fortune's assumption of the lease under § 365(b)(1)(A). Because the lower courts already determined the reasonableness of the amount of fees and Fortune does not challenge that determination, there is no need to revisit that issue upon remand.

III.

We therefore reverse the district court's affirmance of the bankruptcy court's judgment insofar as it interpreted the parts of the lease between Fortune and MSA that governed the fees due. In accordance with the reasoning expressed in this opinion, we remand the case to the district court for further findings and determinations regarding the fees demanded by MSA.

REVERSED AND REMANDED